**Arnold H. PROSS, Plaintiff,**

v.

**BAIRD, PATRICK & CO., INC., Defendant.**

**No. 83 Civ. 2830 (WCC).**

United States District Court, S.D. New York.

Feb. 8, 1984.

**1458**

Stanley Alter, P.C., New York City, for plaintiff.

Pollack & Kaminsky, New York City, for defendant; Martin I. Kaminsky, Edward T. McDermott, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

Plaintiff Arnold Pross ("Pross") originally commenced this action against his broker, Baird, Patrick & Co., Inc. ("Baird"), alleging violations of Securities and Exchange Commission ("SEC") Rule 10b–5, 17 C.F.R. § 240.10b–5, and state law claims for breach of contract and breach of fiduciary duty. In an Opinion and Order dated August 1, 1983, this Court denied defendant's motion to dismiss the federal securities law claim, but ordered arbitration of the common law claims pursuant to an arbitration agreement contained in the brokerage contract between the parties. That Order compelling arbitration was, however, stayed pending resolution of the instant action. The case is currently before the Court on defendant's motion for summary judgment on the remaining federal securities law claim. For the reasons stated below, that motion is granted.

Before a court can properly grant a motion for summary judgment, it must be satisfied that the moving party has met its burden of establishing that there is no genuine issue with respect to any material fact and that he is entitled to judgment as a matter of law. Rule 56, F.R.Civ.P.; *Friedman v. Meyers*, 482 F.2d 435, 438–39 (2d Cir.1973). In making this determination, the Court cannot try issues of fact but can only determine whether there are issues of fact to be tried. *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). The Court will consider affidavits, depositions, answers to interrogatories, and admissions, but will not give any effect to mere conclusory allegations or denials, or to unsubstantiated assertions submitted by a party. *Id.* When the moving party comes forward with evidence showing that his opponent's case is without merit, "the opponent cannot rest on the allegations of the complaint but must adduce factual material which raises a substantial question of the veracity or completeness of the movant's showing or presents countervailing facts." *Beal v. Lindsay*, 468 F.2d 287, 291 (2d Cir.1972).

In his complaint, Pross states that he had a nondiscretionary account with Baird. He alleges that during November and December of 1982, Baird made trades for that account in the stock of Nitron, Inc. ("Nitron"), without his prior consent and, indeed, at times contrary to his specific instructions. Pross further alleges that in making the trades, Baird failed "to disclose any facts to [Pross] concerning the corporation whose shares were being traded on his behalf," including the fact that Baird was "making a market" in Nitron stock, and that Baird engaged in the transactions for its own benefit.

In order to state a cognizable claim for fraud under Rule 10b–5, a plaintiff must allege conduct by the defendant which can fairly be viewed as "manipulative or deceptive" within the meaning of § 10(b) of the Securities Exchange Act of 1934.[1] *Santa Fe Ind., Inc. v. Green*, 430

---

**1.** The other elements necessary for a valid cause of action under § 10(b) and Rule 10b–5 are: (1)

U.S. 462, 473–74, 97 S.Ct. 1292, 1300–01, 51 L.Ed.2d 480 (1977). Manipulation is "virtually a term of art when used in connection with the securities markets," and refers narrowly to practices, such as wash sales, matched sales, or rigged prices, which artificially affect market activity in order to mislead investors. *Id.* at 476–77, 97 S.Ct. at 1302, *quoting Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 189, 96 S.Ct. 1375, 1378, 47 L.Ed.2d 668 (1976). However, in situations not involving a manipulative scheme, the conduct alleged as fraudulent must include deception, misrepresentation, or nondisclosure to violate § 10(b) or Rule 10b–5. *See id.* 430 U.S. at 474–76, 97 S.Ct. at 1301–02.

■ Baird's actions, which Pross has alleged to be fraudulent in the instant case, clearly involve no manipulative activity in the technical sense in which that term is used in the securities laws. Thus, Pross must point to some deceptive action, or material misrepresentation or nondisclosure by Baird in order to maintain his claim of a violation of Rule 10b–5. In his complaint and affidavits in opposition to the instant motion, the only material misstatement or omission Pross identifies is Baird's failure to disclose that it was "making a market" in the stock of Nitron at the time that stock was purchased for plaintiff's account. Although failure by a broker to disclose that it is "making a market" in a particular security is a material omission, which nondisclosure by itself establishes reliance, *see Chasins v. Smith, Barney &*

*Co.,* 438 F.2d 1167, 1171–72 (2d Cir.1971), Baird has demonstrated, without contradiction by plaintiff, that it adequately disclosed its market-maker status.

■ In support of its motion, Baird has shown that immediately following each purchase of Nitron stock, and well prior to the settlement date for each transaction, it sent to Pross a confirmation slip that clearly stated "we make a mkt in this security." *See* Glynn Aff. at 2–3; Def. Ex. 1. In addition, in Pross's monthly statements dated November 26, 1982 and December 31, 1982, Baird reiterated its disclosure that "we make a mkt in this security." *See* Def. Ex.'s 2 and 3. Plaintiff has not disputed the evidence that Baird made these disclosures.[2] Thus, under these circumstances, there exists no factual basis for concluding that Baird failed adequately to disclose to Pross that it was making a market in Nitron stock. *See Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 482 F.2d 880, 885 (5th Cir.1973) (receipt of market-maker disclosure by wire one month after trade sufficient); *Batchelor v. Legg & Co.,* 52 F.R.D. 545, 556 (D.Md.1971) (disclosure in confirmation slips adequate); *see also Parsons v. Hornblower & Weeks-Hemphill Noyes,* 447 F.Supp. 482, 493 (M.D.N.C.1977), *aff'd,* 571 F.2d 203 (4th Cir.1978). So long as a broker adequately discloses its status to its customer, "it is not a fraudulent practice for a brokerage firm to act as a market-maker and to sell securities to its customers as a principal." *In re Scientific Con-*

---

the plaintiff must have been a purchaser or seller of securities; (2) the defendant's manipulative or deceptive conduct must have "touched" the plaintiff's purchase or sale; (3) the defendant must have acted with scienter; (4) the plaintiff must have acted in reliance upon or without knowledge of the defendant's fraudulent conduct; (5) the defendant's conduct must have been a cause in fact of the plaintiff's injury; and (6) the mails or other means of interstate commerce or the facilities of a national securities exchange must have been used. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 1380, 47 L.Ed.2d 668 (1976) (scienter); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 754–55, 95 S.Ct. 1917, 1934, 44 L.Ed.2d 539 (1975) (purchaser or seller); *Affiliated Ute*

*Citizens of Utah v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972) (reliance and causation); *Superintendent of Ins. v. Bankers Life & Cas. Co.,* 404 U.S. 6, 12–13, 92 S.Ct. 165, 168–69, 30 L.Ed.2d 128 (1971) (fraud must touch purchase or sale).

**2.** Indeed, not only does plaintiff's affidavit fail to contradict these facts, but plaintiff has failed to submit any statement, pursuant to Rule 3(g) of the Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, stating the material facts he contends are in dispute. In the absence of such a statement, the facts included in defendant's statement are deemed admitted.

*trol Corp. Sec. Lit.,* 71 F.R.D. 491, 508 (S.D.N.Y.1976). Accordingly, in light of Baird's disclosure of its status, there is no legal basis for Pross's charge that Baird acted improperly in purchasing Nitron securities for his account at a time when Baird was making a market in those shares.

■■■■ Stripped of its one allegation of nondisclosure,[3] plaintiff's complaint is reduced to a claim that Baird made trades on his behalf which were contrary to his express instructions and in derogation of the parties' brokerage agreement. The only issue to be determined in the instant case is whether the transactions in Nitron stock were authorized. While the conduct in which Baird allegedly engaged was reprehensible, it does not involve the element of deception necessary to be violative of Rule 10b–5. At most, it provides the basis for a claim of breach of fiduciary duty or breach of contract, which, without more, cannot be converted into a fraud claim under § 10(b) and Rule 10b–5.[4] *See Santa Fe,* 430 U.S. at 476, 97 S.Ct. at 1302 (breach of fiduciary duty, without any deception, misrepresentation, or nondisclosure does not violate § 10(b) or Rule 10b–5); *Cf. Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 445 (2d Cir.1971) (claim that broker sold out customer's account without giving customer opportunity to post additional margin, in violation of agreement between parties, is nothing more than garden-variety suit for breach of contract and cannot, without facts amounting to scienter, to be bootstrapped into a Rule 10b–5 claim); *Zerman v. Jacobs,* 510 F.Supp. 132, 134 (S.D.N.Y. 1981) (claim for liquidation of margin account in violation of oral agreement not to liquidate sounds in breach of contract, not

federal securities law); *Haynes v. Anderson & Strudwick, Inc.,* 508 F.Supp. 1303, 1318 (E.D.Va.1981) (claim that broker purchased stock for customer without authorization does not, without facts showing that broker acted with an intent to deceive, manipulate or defraud, establish a claim under Rule 10b–5); *Cortlandt v. E.F. Hutton, Inc.,* 491 F.Supp. 1, 4 (S.D.N.Y.1979) (claim that broker sold securities without customer's consent was claim for violation of written margin agreement and not cognizable under § 10(b) and Rule 10b–5); *Wassel v. A.G. Edwards & Sons, Inc.,* 425 F.Supp. 1205, 1207 (D.Md.1977) (claim alleging unauthorized purchases and sales on customer's account, without any allegation of misrepresentation except sending of confirmation slip, does not support claim for violation of § 10(b) and Rule 10b–5).

■■■■ Although plaintiff's attorney attempts, in his briefs, to convert Pross's claim into something beyond what has been alleged in the complaint, those efforts are unavailing. Pross's claim is simply not like a claim of churning, where a broker abuses his position of control over his client's account to engage in excessive trading in disregard of the client's investment objectives. *See Mihara v. Dean Witter & Co., Inc.,* 619 F.2d 814, 821 (9th Cir.1981). In a churning case, the broker uses the discretionary authority with which he has been vested to generate excessive commissions for himself, while at the same time leading his customer to believe that he is attempting to fulfill the customer's investment objectives. The instant case, however, involves the entirely different issue whether certain transactions were in fact authorized by plaintiff or by the parties' agreement. While the act of churning an account has

---

**3.** If plaintiff was relying upon other misrepresentations or nondisclosures by defendant, he was required, in response to a motion for summary judgment to come forward with enough proof of his allegations to create an issue for trial. Pross has failed to do so in response to the instant motion. His use of conclusory charges of fraud without any supporting factual allegations, no matter how frequently stated, does not meet this burden. *See Zerman v. Jacobs,* 510 F.Supp. 132, 134 (S.D.N.Y.1981).

**4.** Moreover, assuming the adequacy of Baird's disclosure of its status, the facts alleged by Pross fail to establish scienter, another essential element of a claim under § 10(b) and Rule 10b–5. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *see also* note 1, *supra.*

long been considered a scheme or artifice to defraud within the meaning of Rule 10b–5, *see id.*, the simple breach of a brokerage agreement, absent some act of deception, misstatement or omission, has not. Pross's claim falls into the latter, not the former category.

■ Moreover, while Pross fastens upon the language of the Court of Appeals for the Second Circuit in *R.A. Holman & Co. v. SEC*, 366 F.2d 446 (2d Cir.1966), that "confirmations of unauthorized transactions are violative of the anti-fraud provisions of the securities acts," *id.* at 451, he has taken that language out of context. The unauthorized transactions in *Holman* were part of an overall fraudulent scheme designed artificially to stimulate the market for a new offering with which the defendants were involved. Moreover, even if the court's comment could be viewed in isolation from the manipulative scheme involved in that case, it must be considered outdated in light of the Supreme Court's later decision in *Santa Fe*, which limits claims under Rule 10b–5 to frauds involving manipulative or deceptive activity. The mere sending of a confirmation slip, not otherwise misleading, for a transaction whose authorization is disputed, is not by itself deceptive. *Cf. Wassel*, 425 F.Supp. at 1207.

■ Finally, plaintiff in his supplementary brief attempts for the first time to portray this as a case for fraud in the inception. While it is indeed true that allegations that one entered into a contract by making promises he never intended to keep will serve to distinguish a case from an ordinary breach of contract action, *see Madison Consultants v. Federal Dep. Ins. Corp.*, 710 F.2d 57, 66 (2d Cir.1983), Pross has simply alleged no facts in support of such a claim. Accordingly, his argument on this ground must be rejected.

For the reasons stated above, defendant's motion for summary judgment dismissing plaintiff's Rule 10b–5 claim is granted. Pross is not, however, without a remedy for the injuries he allegedly suffered due to the improper conduct of Baird.

Defendant is hereby ordered to proceed promptly to arbitrate, in accordance with the parties' prior agreement, plaintiff's common law claims arising out of defendant's handling of his brokerage account. This action will be dismissed. Submit final judgment order, within five days of the date of this Opinion and Order, on five days' notice.

SO ORDERED.