PRESTON Q. HALE, Appellant, *v.* JOE E. BURKHARDT AND JOE E. BURKHARDT AND ASSOCIATES, Respondents.

No. 18426

November 22, 1988 764 P.2d 866

*Osborne, Jenkins & Gamboa* and *Thomas J. Gaffney* and *Cathy L. Bradford,* Reno, for Appellant.

*Stephen C. Mollath* and *Patricia F. Winnie,* Reno, for Respondents.

## OPINION

*Per Curiam:*

Appellant, Preston Q. Hale, a real estate broker, entered into an oral agreement with respondents, Joe E. Burkhardt and Joe E. Burkhardt and Associates (hereinafter "Burkhardt"), in which Hale was to assist Burkhardt in purchasing real property comprising an entire city block in Reno, Nevada, for a development project to be known as Liberty Center. Hale claims that as a result of his efforts, Burkhardt was able to purchase the property for his project. Burkhardt refused to pay Hale, and Hale sued for broker's commissions and fees claimed to be due to him. Hale's fourth cause of action[1] was brought under Nevada's civil racketeering statute, NRS 207.470, and alleged that Burkhardt violated Nevada's criminal racketeering statute, NRS 27.400, sections (1)(a)(1)-(2), (1)(b) and (1)(c)(1)-(2), by obtaining services, money or property by false pretenses. After first allowing Hale to file an amended complaint, the trial court dismissed Hale's civil RICO claim with prejudice, pursuant to NRCP 12(b)(5). We affirm the dismissal.

### Nevada's Civil RICO Statute

Nevada's anti-racketeering statutes, NRS 207.350 through NRS 207.520, inclusive, were enacted in 1983[2] and are patterned after the federal Racketeer Influenced and Corrupt Organizations, or "RICO," statutes, 18 U.S.C. 1961-1968. Like their federal counterparts, Nevada's anti-racketeering statutes provide for a civil cause of action for injuries resulting from racketeering activities under which a plaintiff may recover treble damages, attorney's fees and litigation costs. *See* NRS 207.470.[3]

Pursuant to NRS 207.470 and NRS 207.400, a civil RICO cause of action may be based upon allegations and proof that the defendants

> engag[ed] in at least two crimes related to racketeering that have the same or similar pattern, intents, results, accom-

---

[1]The first three causes of action alleged breach of contract, breach of implied covenants of good faith and fair dealing and unjust enrichment.

[2]NRS 207.415 was added to Nevada Revised Statutes in 1985.

[3]NRS 207.470 states in part that:

> Any person who is injured in his business or property by reason of any violation of NRS 207.400 has a cause of action against a person causing such injury for three times the actual damages sustained. An injured person may also recover attorney's fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred.

plices, victims or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents, if at least one of the incidents occurred after July 1, 1983, and the last of the incidents occurred within 5 years after a prior commission of a crime related to racketeering.

NRS 207.390. "Crimes related to racketeering" are enumerated in NRS 207.360 and include the crime of obtaining money or property valued at $100 or more by false pretenses, the crime that Hale has attempted to charge in his fourth cause of action. *See* NRS 207.360(26).

### Prior Criminal Convictions and Racketeering Injuries

Hale's amended complaint appears to center on his claim that Burkhardt engaged in three different criminal "schemes." Following oral argument in this case, we ordered further briefing on two questions which have assumed importance in comparable RICO cases and which were not addressed in the parties' briefs. We asked: (1) whether proof of conviction of crimes related to racketeering (*i.e.* "predicate crimes") *or* of a RICO violation is a prerequisite to a civil RICO cause of action; and (2) whether it is necessary to demonstrate a "racketeering injury" different from that caused by the "predicate crimes" themselves. While these questions have been resolved in the federal courts,[4] we note that Nevada's civil RICO statute differs in some respects from the federal civil RICO statute.

After careful consideration of the parties' arguments on these issues, we decide that proof of prior convictions of "predicate crimes" or of a RICO violation is not a prerequisite to a civil RICO cause of action brought pursuant to NRS 207.470. We note that NRS 207.470(2) provides that "[a] final judgment or decree

---

[4]In Sedima, S.P.R.L. v. Imrex Co., Inc., 741 F.2d 482 (2nd Cir. 1984), the Court of Appeals for the Second Circuit held that the phrase "by reason of a *violation* of section 1962 of this chapter" in 18 U.S.C. 1964(c) meant that "[t]o bring a private civil [RICO] action, there must be a 'violation,' that is, criminal convictions on the underlying predicate offenses." *Sedima,* 741 F.2d at 503. The Second Circuit additionally held that the "by reason of" language in the federal civil RICO statute "requires that plaintiffs allege injury caused by an activity which RICO was designed to deter, which, whatever it may be, is different from that caused simply by [the] predicate acts [themselves]." *Sedima,* 741 F.2d at 494.

The United States Supreme Court, in Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985), reversed the decision of the Second Circuit, holding that there is no prior-conviction requirement under the federal civil RICO statute nor is there a requirement of a "racketeering injury" separate from the harm caused by the predicate acts themselves.

rendered in favor of the state in any criminal proceeding under NRS 205.322 or 207.400 estops the defendant in any subsequent civil action or proceeding from denying the essential allegations of the criminal offense." We are persuaded by Hale's argument that to require proof of a prior conviction would render NRS 207.470(2) superfluous, in violation of well-settled principles of statutory construction. *See, e.g.,* McCrackin v. Elko Cty. School Dist., 103 Nev. 655, 747 P.2d 1373 (1987). We further agree with Hale that the legislature's omission of the term "conviction" in the text of NRS 207.360, NRS 207.390, NRS 207.400 and NRS 207.470 raises the presumption that it was not the legislature's intent to require proof of a conviction as a prerequisite to a civil RICO claim in Nevada's courts. *Cf.* 4447 Corp. v. Goldsmith, 504 N.E.2d 559 (Ind. 1987).

We further decide that a plaintiff bringing a civil RICO action under NRS 207.470 need not allege an injury separate and distinct from the harm caused oy the predicate acts themselves. Again, we agree with appellant Hale that NRS 207.400 and NRS 207.470—when read in conjunction with their ancillary provisions—are sufficiently clear in specifying the type of racketeering injury contemplated by the legislature that it is unnecessary for this court to attempt to create or define judicially a special racketeering injury.

### Failure to State a Claim Upon Which Relief Can Be Granted

Having decided that a civil RICO plaintiff need not plead and prove either criminal convictions or separate "racketeering injuries," we next consider Hale's principal issue on appeal, namely, whether the trial court erred in dismissing Hale's fourth cause of action on the ground that it does not state a claim upon which relief can be granted. In so doing, we are mindful that the trial court's NRCP 12b(5) dismissal of the RICO cause of action must be carefully reviewed. A claim should not be dismissed on this ground unless it appears to a certainty that the plaintiff is not entitled to relief under any set of facts which could be proved in support of the claim. Edgar v. Wagner, 101 Nev. 226, 699 P.2d 110 (1985). It is for this reason that we analyze in some detail the three criminal "schemes" which plaintiff has set forth in support of his RICO claim. We conclude that Hale has failed to charge the requisite predicate crimes and thus fails to state a claim upon which relief can be granted.

Presumably (although not specifically charged) the "predicate crimes" upon which the RICO cause of action is based are

violations of NRS 205.380, obtaining money, property or labor under false pretenses. A false pretense is a representation of some fact or circumstance which is not true and is calculated to mislead; it may consist of any words or actions intended to deceive. Buckner v. State, 95 Nev. 117, 590 P.2d 628 (1979).

The principal defect in Hale's pleading is that no false pretense is averred. In reading each of the three supposedly criminal schemes set forth in the complaint, we are unable to determine just what, if any, untrue representations Burkhardt is charged with having criminally made to Hale. Even where conclusory statements hint at what might relate to some kind of misrepresentation, the statements are so lacking in content as to render them unintelligible as accusatory averments. Absent allegations of false pretenses, pleading of the so-called predicate crimes is jurisdictionally deficient, and Hale is not entitled to any RICO relief under this pleading.

Even had the narration of the three supposed "schemes" stated the elements of a false pretenses crime and thus charged criminal violation of NRS 205.380, the pleading lacks the kind of specificity that is called for in making such allegations. Not only is there a basic failure to articulate any misrepresentation on the part of respondents, there is no information provided in the complaint as to when, where or how such false representations are claimed to have been made.

The federal courts have demanded specificity in pleading the racketeering acts in a civil RICO cause of action. For example, the court in Bache Halsey Stuart Shields v. Tracy Collins Bank, 558 F.Supp. 1042 (C.D. Utah 1983), ruled that the "factual basis" of acts of racketeering must be "set out with particularity." *Bache Halsey,* 558 F.Supp. at 1045-46; *see also* Bamco 18 v. Reeves, 675 F.Supp. 826 (S.D.N.Y. 1987); Banco de Desarrollo Agropecuario v. Gibbs, 640 F.Supp. 1168 (S.D.Fla. 1986); Laterza v. American Broadcasting Co., Inc., 581 F.Supp. 408 (S.D.N.Y. 1984). As in federal jurisprudence, an action brought under NRS 207.470, although civil in nature, nevertheless may involve the pleading of racketeering-related predicate *crimes;* and there is no reason the requirement of pleading with particularity should not apply in state actions just as it does in the federal context.

In addition to recognizing the quasi-criminal nature of the civil RICO cause of action, the court in *Bache Halsey* expressed two other reasons for its insistence on specificity in a civil RICO pleading. First, the courts need sufficient facts in the pleading to enable them to distinguish between well founded and frivolous claims in order to prevent the "overenthusiastic" use of RICO.

Second, and of equal importance, such specificity is necessary to enable the RICO defendant to prepare a defense against a treble damages claim.

While Nevada has yet to deal with the explosion of RICO litigation experienced in the federal courts, we nevertheless have a present concern that civil RICO actions be pleaded with sufficient specificity because of the very serious consequences attached to the allegations of criminal conduct that are the essence of this kind of law suit. Not only is a civil RICO defendant accused of committing a criminal offense—which carries with it the potential for considerable social stigma—such a defendant is also confronted with the possibility of an adverse treble damages judgment.

Because the present civil RICO action, despite its fundamentally civil nature, (1) involves pleading the commission of racketeering-related crimes and (2) permits the levy of serious punitive consequences, the same degree of specificity is called for as in a criminal indictment or information. A civil RICO pleading must, in that portion of the pleading which describes the criminal acts that the defendant is charged to have committed, contain a sufficiently "plain, concise and definite" statement of the essential facts such that it would provide a person of ordinary understanding with notice of the charges. Cf. NRS 173.075(1); Shapely v. State, 93 Nev. 184, 561 P.2d 1339 (1977).

In examining the three "schemes" that are offered by Hale to show that Burkhardt had engaged in crimes relating to racketeering, we have no difficulty in coming to the conclusion that, in this area of pleading, Hale has failed to state a claim upon which RICO relief can be granted.[5]

We now undertake a "scheme by scheme" inspection of Hale's attempt to levy criminal charges against Burkhardt and conclude that none of these charges contains either the essential elements of the crime of obtaining money, property or labor under false pretenses nor do they possess the conciseness and definiteness that would provide a person of ordinary understanding with proper notice of the charges.

### Scheme A: The Liberty Center Transaction

In "Scheme A," Hale begins by alleging that Burkhardt breached an oral agreement under which Hale agreed to help Burkhardt acquire certain real estate in return for some kind of

---

[5]We do not express an opinion on the sufficiency of other aspects of Hales' RICO claim and hold only that the pleading fails its attempt to charge the necessary "predicate crimes."

unspecified monetary payment. According to Hale, Burkhardt's breach of contract was carried out pursuant to a "scheme" by Burkhardt to obtain Hale's services by means of some unspecified fraud or "false pretense."

Assuming that Hale is referring to the crime of obtaining something of value by false pretenses, we look to NRS 205.380. The elements of a violation of NRS 205.380 are as follows: (1) intent to defraud; (2) a false representation; (3) reliance on the false representation; and (4) that the victim be defrauded. Bright v. Sheriff of Washoe County, 90 Nev. 168, 521 P.2d 371 (1974). Of course, the failure to allege any one of these elements with the required specificity would defeat the entire criminal charge. For the purposes of this opinion, we need only examine Hale's allegations regarding the second element—that a false representation was made—to find that Hale has not stated a cognizable criminal offense.

Hale's complaint states in vague and conclusory fashion that Burkhardt used "false or fraudulent pretenses [sic], representations or promises, and . . . knowingly and willfully [used] untrue statements of material facts" to induce Hale to perform services in the amount of $182,250.00. But Hale entirely fails to allege any *specific false representations* upon which he may have relied and that might have caused him to be defrauded. All the complaint says is that Burkhardt made an oral promise to pay Hale for his services and that Hale now claims that he has not been paid; it does not allege any specific false representations by Burkhardt. Hale's failure to state the nature or content of any concrete representations, and his failure to describe the context in which any representations might have been made, is fatal to this portion of his complaint.

We recognize that a promise made without intention to perform might constitute a false representation of a state of mind, Balsamo v. Sheriff, 93 Nev. 315, 565 P.2d 650 (1977), but Hale does not allege that Burkhardt entered into the agreement while having no intention to perform. Hale only states that Burkhardt "assented to and represented that the agreement was accepted by [Burkhardt]," which is to say only that Burkhardt was a party to the agreement.[6]

---

[6]Hale also charges that Burkhardt's "refusal to pay" Hale was the "culmination of a scheme . . . to obtain the value of Plaintiff's services by means of false pretense, by inducing Plaintiff to *continue* work . . . *with the intent of refusing . . . to pay Plaintiff.*" (Emphasis supplied.) If indeed at some time during Hale's continuing work on the project, Burkhardt formulated an intent not to pay Hale, such a decision might ripen into a breach of contract (as

We therefore conclude that the allegations contained in "Scheme A" do not contain the essential elements of the crime of false pretenses, or any other crime, nor are the facts stated, stated with the particularity required for pleading a racketeering-related crime.

### Scheme B: The Capital Group Transaction

Hale alleges a second criminal scheme in his complaint which centers around what he calls the "Capital Group Transaction." Hale alleges that this second scheme is similar in nature to the Liberty Center scheme discussed above. We find it even more difficult, however, to ascertain from Hale's complaint what, if any, crimes Burkhardt engaged in with regard to this second scheme. Again, in this section of his complaint Hale does not provide any citations to criminal statutes relevant to the underlying predicate crime.

Even if we again take the liberty of assuming that Hale's allegations in this portion of the complaint were meant to establish that Burkhardt violated NRS 205.380, we again find the allegations sorely lacking in substance. The complaint's description of this supposed "scheme" consists of a disjointed series of vague allegations lacking in overall coherence. It alleges that Burkhardt "breached the terms" of a contract with the Capital Group, primarily by refusing to pay for the Capital Group's expenses and services, and charges that Burkhardt engaged the services of one Pamela van Cleave, "directly and on terms adversarial to the exclusive contract with the Capital Group." It further describes, based upon information and belief, several allegedly "fraudulent" statements made by Burkhardt. For example, it alleges that "the Defendants fraudulently represented to Douglas Gowan and the Capital Group, Inc. as well as to numerous [unnamed] other parties, that PRESTON HALE was the real estate agent who would lease [Liberty Center] and further, Defendants fraudulently used Plaintiff's name with various [unnamed] lenders for credit enhancement and to lend credibility to the Liberty Center Project all to the detriment of Plaintiff PRESTON HALE . . . in order to obtain money or property by false pretenses."

"Scheme B" fails, however, to inform the reader as to what relationship there might be between Burkhardt's alleged breach of the contract and the charged, but unspecified, false representations, or the circumstances surrounding the false representations.

---

claimed in Hale's first cause of action) but does not constitute fraud absent some allegation as to what fraudulent words or conduct induced Hale "to continue work."

Likewise, this part of the complaint fails to reveal the identity of the parties to whom the misrepresentations were made, or who was actually defrauded, much less how much ill gotten gain resulted from the supposed deception.[7] Even worse, this portion of the complaint fails to specify the requisite elements of NRS 205.380: (1) intent to defraud; (2) a false representation; (3) reliance on the misrepresentation; and (4) that the victim was defrauded. *See Bright,* 90 Nev. at 170, 521 P.2d at 372. The closest Hale comes to pleading properly these elements of the crime of obtaining money, property or labor by false pretenses is the mere conclusory allegation that Burkhardt "fraudulently represented . . . that . . . HALE was the real estate agent who would lease [Liberty Center.]" As did the trial court, we decline to read into this statement the missing factual allegations necessary to plead the commission of a predicate crime. Finally even if these allegations had contained the elements of a cognizable racketeering-related crime, the allegations in the complaint do not begin to approach the level of specificity or coherence required in setting forth the elements of a predicate crime upon which a RICO claim can be based.

Scheme C: The Downtown Development Security Transaction
and the Riverside Security Transaction

▮▮▮▮▮▮

Hale's allegations of a third criminal scheme share the opacity of the preceding two schemes. These alleged criminal transactions are presented to the court simply by stating that Burkhardt "is a defendant in an action in St. Louis, Missouri regarding fraud in the sale of securities, mail fraud, and wire fraud" and that a copy of the RICO section of the complaint is attached "for the Court's review to establish that Defendant JOE E. BURKHARDT has engaged in a pattern of racketeering activity to obtain possession of money or property valued at $100.00 or more by means of false pretenses on numerous occasions." Remaining allegations relative to these transactions are on information and belief and add little or nothing to the conclusory statements that Burkhardt is guilty of federal crimes of fraud in securities sales, mail fraud and wire fraud.

To determine which, if any, of the factual allegations in "Scheme C" state cognizable criminal charges would require that we accept Hale's invitation to parse the attached seventy-five-page federal complaint attached to his complaint. As we

---

[7]There is one reference, however, to $32,000.00 in fees owed by Burkhardt for loans placed with Nevada National Bank by the Capital Group. No explanation is provided as to precisely how this alleged debt is related to the racketeering activity alleged by Hale.

believe that the trial court properly declined this invitation to distill some kind of a criminal charge from the mentioned federal lawsuit, we also decline to do so.

### Conclusion

In order to state a claim upon which relief can be granted, based upon allegations that Burkhardt engaged in racketeering activity, Hale must properly plead that Burkhardt engaged in at least two crimes related to racketeering. *See* NRS 207.390. This Hale has completely failed to do. While several of the schemes appear to suggest some of the elements of cognizable racketeering-related crimes, none is sufficiently coherent or complete as to enable this court to determine the specific crimes Burkhardt is charged with having committed.

We note in closing that Hale's RICO cause of action does not fail because of any purely technical deficiency, such as the omission of citations to the criminal statutes relating to the criminal charges against Burkhardt. Nor is it defeated by simple failure to measure up to the standards of specificity discussed earlier. It suffers from a combination of these defects, but principally from a failure to state the necessary elements of the predicate crimes of obtaining money or property or labor by means of any specified false pretenses or misrepresentations.

Having determined that Hale's fourth cause of action fails to state a claim upon which relief can be granted, we conclude that the trial court correctly dismissed Hale's civil RICO claims; therefore, we affirm the judgment of the trial court.